IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WENDY MITCHELL,                }
                               }
     Plaintiff,                }
                               }
                               }     CIVIL ACTION NO.
v.                             }     09-AR-1913-S
                               }
SUNTRUST MORTGAGE, INC.,       }
                               }
     Defendant.                }

**MEMORANDUM OPINION**

The above-entitled case was removed to this court from the Circuit Court of Shelby County, Alabama, by defendant, SunTrust Mortgage, Inc. ("SunTrust"), invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. The citizenships of plaintiff, Wendy Mitchell ("Mitchell"), and SunTrust are admittedly diverse. The only question presented by Mitchell's motion to remand, upon which oral argument was heard on October 13, 2009, is whether or not the amount in controversy exceeds the $75,000 necessary for conferring subject-matter jurisdiction on this court.

On the record before it, the court finds that SunTrust has not met its burden of proving the existence of the jurisdictional amount, as that burden was carefully explained by the Eleventh Circuit in *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), and elaborated by this court in *Constant v. International House of Pancakes, Inc.*, 487 F. Supp. 2d 1308 (N.D. Ala. 2007).

Mitchell's state court complaint, filed on September 16, 2009,

sought a temporary restraining order against SunTrust's threatened mortgage foreclosure then scheduled for September 17, 2009. The mortgage secured an unspecified balance owed by Mitchell to SunTrust on a promissory note. The complaint also sought an unspecified amount of monetary damages for the Alabama torts of fraud and misrepresentation. The Circuit Court of Shelby County granted the TRO *ex parte* on September 16, 2009, and fixed a bond which Mitchell says she posted. SunTrust filed its notice of removal before the Circuit Court of Shelby County could hold its mandatory hearing on Mitchell's request for a preliminary injunction.

There are several peculiarities about this case, some of which bear on this court's subject-matter jurisdiction under § 1332, and some of which do not. The first peculiarity is that Mitchell filed for Chapter 7 bankruptcy on May 7, 2009, at a time when she admittedly owed large outstanding balances on two promissory notes payable to SunTrust, respectively secured by a first and a second mortgage on her home. On July 29, 2009, before being discharged in bankruptcy, she executed reaffirmation agreements on both obligations. They reflected new outstanding principal balances of $177,575.73, secured by the first mortgage, and $44,446.35, secured by the second. Each of these reaffirmation agreements provides that the first payment "is due on 02/01/09", a date three months before the bankruptcy proceeding was initiated, and five months

2

before the novations. In other words, on July 29, 2009, Mitchell was purportedly agreeing miraculously to make payments on February 1, 2009, toward obligations against which she had bankrupted on May 7, 2009. In theory, she was five months in arrears the moment she signed the novations.

The second peculiarity is a true anomaly. SunTrust only seeks to foreclose its **first** mortgage. If the foreclosure sale occurs, and SunTrust bids its full balance of $177,575.73, and becomes the successful bidder, it will acquire title to Mitchell's home, and eliminate the second mortgage. But, what about the separate $44,446.35 note that was novated by Mitchell on July 29, 2009? On the face of it, after wiping out her personal liability to SunTrust, Mitchell has personally re-obligated herself for $44,446.35, and can be sued for that sum despite her bankruptcy. Was this possibility contemplated by the parties?

SunTrust argues that the kinds of torts alleged by Mitchell, including her claims for punitive damages, are of the kind that prove on their faces the existence of more than $75,000 in controversy. SunTrust overlooks the lessons of *Lowery* and *Constant*. The complaint contains no *ad damnum* clause, and this court is not allowed to speculate about the damages plaintiff hopes to recover in an Alabama court, or to guess what an Alabama jury might do.

SunTrust next argues that the requisite amount in controversy

is proven by the value of the real property that is the subject of the dispute.  There are two answers to this argument.  The first is that Mitchell, whether deliberately or by accident, does not seek a **permanent** injunction against the foreclosure.  She only seeks a TRO to be followed by a preliminary injunction.  Neither does she seek to set aside her monetary obligations or to cancel the mortgages.  Inartfully, she may be seeking a reformation of her mortgages, something that, if accomplished, predictably would not subtract more than $75,000 from her secured obligations.  Within the Eleventh Circuit, the amount in controversy is always determined from the perspective of the plaintiff.  *See Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216 (11th Cir. 1997).  None of the cases cited by SunTrust are from the Eleventh Circuit or from the Supreme Court and are therefore not binding on this court.  Furthermore, they all involve cases in which the mortgagor requests a **permanent** injunction.  What is a TRO or a preliminary injunction worth?  Again, the value of temporary relief to a plaintiff is speculative.

The second answer to SunTrust's argument assumes *arguendo* that the value of the mortgaged property provides the means for determining the amount in controversy. Unfortunately for SunTrust, there is nothing in this complaint or in the removal papers to prove, as required by *Lowery*, the fair market value of this particular parcel of real property.  The mere fact that SunTrust

was willing to lend $231,000 on a particular house does not prove that the house is worth $231,000. It is unfortunately true that in recent times eager lenders have lent more than what they knew to be the fair market value of the real property that purportedly secured the loan, and further never contemplated that real estate values would plunge. Although it may be an exercise of poor judgment, there is nothing illegal about a lender lending $100,000 on property actually worth $100.

Because the amount in controversy here is speculative, Mitchell's motion to remand will be granted by separate order.

DONE this 15th day of October, 2009.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE